UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| NOVO NORDISK A/S AND NOVO NORDISK INC., <br><br> Plaintiffs, <br><br> v. <br><br> MIDWEST ALTERNATIVE TREATMENT CLINIC, P.C., <br><br> Defendant. | Case No. 24-cv-12804 |

**COMPLAINT**

Plaintiffs Novo Nordisk A/S ("NNAS") and Novo Nordisk Inc. ("NNI") (collectively, "Plaintiffs" or "Novo Nordisk") file their complaint against Midwest Alternative Treatment Clinic, P.C. ("Defendant") for false advertising and deceptive trade practices, and seek injunctive and other relief. Plaintiffs allege as follows, on actual knowledge with respect to themselves and their own acts, and on information and belief as to all other matters.

**INTRODUCTION**

1. Novo Nordisk is a healthcare company with a 100-year history of innovation in developing medicines to treat serious chronic diseases like diabetes and obesity.

2. The development of semaglutide is an example of Novo Nordisk's commitment to innovation for people living with chronic diseases. Semaglutide is the foundational molecule that serves as the primary ingredient for Novo Nordisk's three prescription-only medicines approved by the Food and Drug Administration ("FDA"): Ozempic® (semaglutide) injection and Rybelsus® (semaglutide) tablets for adults with type 2 diabetes and Wegovy® (semaglutide) injection for chronic weight management.

1

3. Novo Nordisk is the only company in the United States with FDA-approved medicines containing semaglutide.

4. Novo Nordisk is also the only company authorized to identify its FDA-approved semaglutide medicines using the trademarks Ozempic®, Wegovy®, and Rybelsus®.

5. The FDA has not approved any generic versions of semaglutide medicines. To the contrary, the FDA has sent warning letters to companies that claimed that their Unapproved Products have the "same active ingredient as Ozempic, Rybelsus, and Wegovy," noting that Ozempic and Wegovy are currently the only "two injectable semaglutide products FDA-approved for the U.S. market."[1]

6. This is an action brought pursuant to the Lanham Act, 15 U.S.C. §§ 1125 *et seq.*, related state laws, and the common law arising out of Defendant's acts of false advertising and unfair and deceptive trade practices.

7. Defendant markets and sells to patients compounded drug products that purport to contain semaglutide.

8. Even though such compounded drug products have not been evaluated by the FDA for their safety, effectiveness, or quality, Defendant falsely and misleadingly represents to patients that its products are FDA-approved or the same as, or equivalent to, Novo Nordisk's FDA-approved semaglutide medicines.

---

[1] FDA – Warning Letter to Ozempen.com, MARCS-CMS 684435 — JUNE 24, 2024, https://www.fda.gov/inspections-compliance-enforcement-and-criminal-investigations/warning-letters/ozempencom-684435-06242024#:~:text=WARNING%20LETTER&text=As%20discussed%20below%2C%20FDA%20has,new%20drugs%20and%20misbranded%20drugs.

9. Defendant's conduct is likely to confuse and deceive patients into mistakenly believing that they are purchasing authentic Novo Nordisk medicines or medicines that have been evaluated by the FDA, studied in clinical trials, and deemed safe and effective.

## THE PARTIES

10. Plaintiff NNAS is a corporation organized and existing under the laws of the Kingdom of Denmark and has its principal place of business in Bagsværd, Denmark.

11. Novo Nordisk developed the Ozempic®, Wegovy®, and Rybelsus® medicines.

12. NNAS has granted to NNI exclusive rights to market, advertise, promote, offer for sale, and sell Ozempic®, Wegovy®, and Rybelsus® medicines in the United States.

13. NNI is a corporation organized and existing under the laws of Delaware and has its principal place of business in Plainsboro, New Jersey.

14. NNI promotes, offers, and sells Novo Nordisk's Ozempic®, Wegovy®, and Rybelsus® medicines throughout the United States, including in this District.

15. Defendant Midwest Alternative Treatment Clinic, P.C. is a professional corporation with a business address at 1100 Lake Street, Suite 260, Oak Park, IL 60301 in this judicial district.

16. Defendant sells and promotes compounded drug products that purport to contain semaglutide, but that have not been approved by the FDA ("Unapproved Compounded Drugs").

17. Defendant falsely claims or otherwise misleadingly suggests that its Unapproved Compounded Drugs are the same as or equivalent to the Ozempic®, Wegovy®, and Rybelsus® medicines.

## JURISDICTION AND VENUE

18. The Court has subject matter jurisdiction over the Lanham Act causes of action pleaded herein pursuant to 35 U.S.C. § 1121 and 28 U.S.C. § 1338(a).

3

19. The Court has supplemental jurisdiction over the state and common law causes of action pleaded herein pursuant to 28 U.S.C. § 1338(b).

20. Defendant is subject to personal jurisdiction in this District because Defendant is a state-registered company and has a principal place of business in this state.

21. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendant operates in this District, manufactures or sells its compounded drug products that purport to contain semaglutide in this District, and otherwise conducts business in this District.

## NOVO NORDISK'S FDA-APPROVED SEMAGLUTIDE MEDICINES AND OZEMPIC®, WEGOVY®, AND RYBELSUS® TRADEMARKS

22. Plaintiffs use the trademarks "Ozempic," "Wegovy," and "Rybelsus" to identify and promote the FDA-approved Ozempic®, Wegovy®, and Rybelsus® medicines. The Ozempic®, Wegovy®, and Rybelsus® medicines are sold and marketed in the United States by NNAS's indirect, wholly-owned subsidiary, NNI.

23. The Ozempic® medicine is indicated for adults with type 2 diabetes to improve blood sugar (glucose), along with diet and exercise. The Ozempic® medicine also lowers the risk of major cardiovascular events such as stroke, heart attack, or death in adults with type 2 diabetes and known heart disease.

24. The Wegovy® medicine is indicated to reduce excess body weight and maintain weight reduction long term in adults and children aged ≥ 12 years with obesity, and some adults with overweight and weight-related medical problems, along with a reduced calorie diet and increased physical activity.

25. The Wegovy® medicine is also indicated, with a reduced calorie diet and increased physical activity, to reduce the risk of major adverse cardiovascular events such as

4

"cardiovascular" death, heart attack, or stroke in adults with known heart disease and with either obesity or overweight.

26. The Rybelsus® medicine is indicated for adults with type 2 diabetes to improve blood sugar (glucose), along with diet and exercise.

27. The Ozempic®, Wegovy®, and Rybelsus® medicines have been extensively studied in clinical trials and are FDA-approved.

28. Each of the Ozempic®, Wegovy®, and Rybelsus® medicines has a unique safety and efficacy profile which is set forth in its respective product label.

29. The Ozempic®, Wegovy®, and Rybelsus® medicines are prescription-only medicines that should only be prescribed in direct consultation with, and under the supervision of, a licensed healthcare professional.

**DEFENDANT'S SALE OF UNAPPROVED COMPOUNDED DRUGS**

30. Novo Nordisk does not sell its FDA-approved semaglutide medicines, Ozempic®, Wegovy®, and Rybelsus®, to Defendant for resale or redistribution.

31. Defendant markets and sells to patients Unapproved Compounded Drugs that purport to contain semaglutide.

32. The FDA has not approved Defendant's Unapproved Compounded Drugs.

33. On information and belief, the Unapproved Compounded Drugs sold by Defendant are made by compounding pharmacies, which deliver them either directly to patients or to Defendant for administration or dispensing to patients.

34. The FDA defines compounding as a "practice in which a licensed pharmacist, a licensed physician, or, in the case of an outsourcing facility, a person under the supervision of a

5

licensed pharmacist, combines, mixes, or alters ingredients of a drug to create a medication tailored to the needs of an individual patient."[2]

35. According to the FDA, "[c]ompounded drugs are not FDA-approved. This means that FDA does not review these drugs to evaluate their safety, effectiveness, or quality before they reach patients."[3]

36. The FDA has further stated that compounded drugs "do not have the same safety, quality, and effectiveness assurances as approved drugs. Unnecessary use of compounded drugs unnecessarily exposes patients to potentially serious health risks."[4]

37. As the FDA has explained, "[c]ompounded drugs pose a higher risk to patients than FDA-approved drugs because compounded drugs do not undergo FDA premarket review for safety, quality or effectiveness. Compounded drugs should only be used for patients whose medical needs cannot be met by an available FDA-approved drug."[5]

38. The process used to produce most "semaglutide" used in compounding is fundamentally different from the process used to produce the semaglutide in Novo Nordisk's FDA-approved medicines. Novo Nordisk manufactures the semaglutide in its medicines, pursuant to its FDA approval, in yeast cells under a closely controlled multistep process that uses recombinant DNA technology. Most compounded "semaglutide," however, uses a "semaglutide" manufactured via chemical synthesis. The fundamental differences between these

---

[2] Human Drug Compounding, https://www.fda.gov/drugs/guidance-compliance-regulatory-information/human-drug-compounding.
[3] Compounding Laws and Policies, https://www.fda.gov/drugs/human-drug-compounding/compounding-laws-and-policies.
[4] Compounding and the FDA: Questions and Answers, https://www.fda.gov/drugs/human-drug-compounding/compounding-and-fda-questions-and-answers.
[5] FDA Alerts Health Care Providers, Compounders and Patients of Dosing Errors Associated with Compounded Injectable Semaglutide Products, https://www.fda.gov/drugs/human-drug-compounding/fda-alerts-health-care-providers-compounders-and-patients-dosing-errors-associated-compounded?utm_medium=email&utm_source=govdelivery.

6

processes have resulted in new impurities, higher levels of known impurities, immunogenicity concerns, and potential stability issues in tested samples of compounded "semaglutide."[6]

39. The FDA has received reports of adverse events, some requiring hospitalization, related to overdoses from dosing errors associated with compounded "semaglutide" products.[7] In several instances, patients mistakenly administered five to 20 times more than the intended dose of compounded "semaglutide."

40. The FDA has stated that the containers and packaging (including multidose vials and prefilled syringes) used by compounders, the varying product concentrations, and the instructions accompanying the compounded drug contribute to the potential medical errors.

41. A publication from the Journal of the American Pharmacists Association also highlighted errors where patients accidentally self-administered doses of compounded "semaglutide" up to ten times greater than the intended amount.[8]

42. FDA has issued guidance on its "Concerns with Unapproved GLP-1 Drugs Used for Weight Loss," which provides that: (1) "compounded drugs are not FDA-approved"; (2) use of compounded drugs containing "semaglutide" "can be risky for patients, as unapproved versions do not undergo FDA's review for safety, effectiveness and quality"; and (3) "FDA has received reports of adverse events related to compounded versions of semaglutide . . . . However, federal law does not require state-licensed pharmacies that are not outsourcing

---

[6] Morten Hach *et al*, Impact of Manufacturing Process and Compounding on Properties and Quality of Follow-On GLP-1 Polypeptide Drugs, Pharm. Res., (Oct. 8, 2024), *available at* https://pubmed.ncbi.nlm.nih.gov/39379664/.

[7] FDA Alerts Health Care Providers, Compounders and Patients of Dosing Errors Associated with Compounded Injectable Semaglutide Products, https://www.fda.gov/drugs/human-drug-compounding/fda-alerts-health-care-providers-compounders-and-patients-dosing-errors-associated-compounded.

[8] Joseph E. Lambson et al, *Administration Errors of Compounded Semaglutide Reported to a Poison Control Center—Case Series*, 63 J. Am. Pharmacists Ass'n 5 (2023), available at https://www.japha.org/article/S1544-3191(23)00231-5/abstract.

7

facilities to submit adverse events to FDA so it is likely that adverse events from compounded versions of these drugs are underreported."[9]

## DEFENDANT'S FALSE ADVERTISING IN CONNECTION WITH ITS SALE OF UNAPPROVED COMPOUNDED DRUGS

43. Despite the foregoing, Defendant has made false and misleading representations to patients regarding the nature of its Unapproved Compounded Drugs.

44. Defendant promotes its Unapproved Compounded Drugs in connection with its operation and advertisement of a health clinic, including through its website.

45. Defendant falsely advertises its Unapproved Compounded Drugs by making statements that describe the Ozempic®, Wegovy®, and Rybelsus® medicines but that are false or misleading when in reference to Defendant's Unapproved Compounded Drugs.

46. Defendant's false advertising and unfair and deceptive trade practices are reflected in the paragraphs that follow as well as **Exhibit A** hereto.

47. Defendant falsely claims or implies that its Unapproved Compounded Drugs have been approved by the FDA or have been reviewed by the FDA for safety, effectiveness, and quality. On its website, Defendant claims, "Semaglutide is a FDA-approved medication that belongs to a class of drugs called glucagon-like peptide-1 receptor agonists (GLP-1 agonists)." Defendant makes similar claims on its social media and elsewhere on its website.

---

[9] FDA's Concerns with Unapproved GLP-1 Drugs Used for Weight Loss, https://www.fda.gov/drugs/postmarket-drug-safety-information-patients-and-providers/fdas-concerns-unapproved-glp-1-drugs-used-weight-loss.

> Semaglutide is a FDA-approved medication that belongs to a class of drugs called glucagon-like peptide-1 receptor agonists (GLP-1 agonists). GLP-1 agonists are used in the treatment of type 2 diabetes mellitus to help regulate blood sugar levels. In addition to its use in diabetes management, semaglutide has also been approved for the treatment of obesity. Semaglutide therapy for obesity treatment is also administered as a subcutaneous injection once a week and aids in reducing appetite and food intake in conjunction with exercise and positive food choices.

> **Are you looking for SEMAGLUTIDE and help with weight loss management?**
> Midwest Alternative Treatment is happy to announce we are now able to provide our patients with access to **Semaglutide**, the FDA-approved medication responsible for helping millions jump-start their journey to weight loss. Our weight loss program includes a **Provider Consultation**,

48. Contrary to Defendant's representations, the FDA has not reviewed or approved a "semaglutide" molecule or medication generally. Instead, the FDA has approved three of Novo Nordisk's complete medicines, which contain semaglutide for the specific indications outlined in the preceding paragraphs.

49. Defendant's false representations mislead customers into believing, incorrectly, that the product with "semaglutide" offered by Defendant has been reviewed and approved by the FDA for safety and effectiveness.

50. Defendant also falsely claims or implies that its Unapproved Compounded Drugs have been subjected to clinical studies and trials, or have otherwise achieved therapeutic outcomes attributable to the Wegovy®, Ozempic®, and Rybelsus® medicines. On its website, Defendant claims, "Clinical trials have shown that semaglutide, in combination with lifestyle modifications, can lead to significant weight loss. On average, people taking semaglutide lost more weight than those on placebo." Defendant makes similar claims on its social media.

> **HOW MUCH WEIGHT CAN BE EXPECTED TO BE LOST WITH SEMAGLUTIDE?**
> Clinical trials have shown that semaglutide, in combination with lifestyle modifications, can lead to significant weight loss. On average, people taking semaglutide lost more weight than those on placebo. However, individual results may vary, and it is important to discuss weight loss expectations with your healthcare provider.

> Semaglutide, originally developed for diabetes management, has gained attention for its potential in weight loss treatment. Administered via injection, it mimics the action of a hormone that regulates appetite and metabolism. Clinical trials have demonstrated significant weight reduction in participants using semaglutide, making it a promising option for individuals struggling with obesity.

51. On information and belief, Defendant has not conducted any placebo-controlled or clinical studies on its Unapproved Compounded Drug and is instead misleadingly referring to studies of Novo Nordisk's FDA-approved medicines to promote Defendant's Unapproved Compounded Drugs.

52. Defendant further falsely and misleadingly claims or implies that its Unapproved Compounded Drugs are "generic" versions of the Ozempic®, Wegovy®, and Rybelsus® medicines. On its website, Defendant claims, "The generic name of Wegovy is semaglutide. It was approved by the U.S. Food and Drug Administration (FDA) in June 2021 for chronic weight management in adults with obesity or overweight individuals who have at least one weight-related condition," and "The generic name of Ozempic is semaglutide as well. Ozempic was initially approved by the FDA in 2017 as a treatment for type 2 diabetes. It is also a GLP-1 agonist, but it is used at a lower dose than Wegovy. Ozempic is administered as a once-weekly injection to help lower blood sugar levels in people with type 2 diabetes."

> The generic name of Wegovy is semaglutide. It was approved by the U.S. Food and Drug Administration (FDA) in June 2021 for chronic weight management in adults with obesity or overweight individuals who have at least one weight-related condition.
>
> The generic name of Ozempic is semaglutide as well. Ozempic was initially approved by the FDA in 2017 as a treatment for type 2 diabetes. It is also a GLP-1 agonist, but it is used at a lower dose than Wegovy. Ozempic is administered as a once-weekly injection to help lower blood sugar levels in people with type 2 diabetes.

53. The FDA has not approved any generic versions of semaglutide medicines. To the contrary, the FDA noted that the Ozempic® and Wegovy® medicines are the only two injectable semaglutide products that have been FDA-approved for the U.S. market.

54. On information and belief, Defendant has engaged in these unlawful practices to attract customers and generate revenues and profits.

55. Defendant's labels, advertising, and promotional materials are false and misleading, suggesting or stating an association with Plaintiffs' FDA-approved Ozempic®, Wegovy®, and Rybelsus® medicines when no such association exists.

56. There is no need for Defendant to use the Novo Nordisk's trademarks to advertise or promote its Unapproved Compounded Drugs purporting to contain "semaglutide," other than to trade on the reputation of Plaintiffs and to create confusion in the marketplace or mislead the public regarding the origin, identity, or source of Defendant's Unapproved Compounded Drugs.

57. Defendant's false and misleading statements and practices are likely to have already caused mistake and deception in the marketplace.

58. Defendant's false and misleading marketing is also likely to expose patients to unnecessary risks. Patients who mistakenly believe Defendant to be offering Novo Nordisk's FDA-approved medicines, or equivalent thereto, are unlikely to understand the unique risks associated with, or the lack of clinical trials or testing establishing the safety and effectiveness of, Defendant's Unapproved Compounded Drugs.[10]

59. On information and belief, unless enjoined by this Court, Defendant will continue to advertise falsely its products as being, equivalent to, or associated with the Ozempic®, Wegovy®, and Rybelsus® medicines, all in violation of Plaintiffs' rights.

---

[10] *See, e.g.*, Dozens Say They Lost Eyesight After Routine Surgery Using Compounded Pharmacy Drugs, WFAA, https://www.wfaa.com/article/news/do-not-publish-yet/287-5f002ed3-e110-4063-9959-a2e5f54b5097 (reporting mistaken belief of patient taking a compounded drug that "every pill you take, every shot you take is tested."); FDA Alerts Health Care Providers, Compounders and Patients of Dosing Errors Associated with Compounded Injectable Semaglutide Products, https://www.fda.gov/drugs/human-drug-compounding/fda-alerts-health-care-providers-compounders-and-patients-dosing-errors-associated-compounded?utm_medium=email&utm_source=govdelivery ("Compounded drugs pose a higher risk to patients than FDA-approved drugs because compounded drugs do not undergo FDA premarket review for safety, quality or effectiveness.").

60. On information and belief, unless enjoined by this Court, Defendant's conduct will continue to cause mistake and deception.

## FIRST CAUSE OF ACTION

**Defendant's False and Misleading Advertising and Promotion
in Violation of 15 U.S.C. § 1125(a)(1)(B)**

61. Plaintiffs reallege and incorporate by reference each of the allegations in the preceding paragraphs of this Complaint as though fully set forth here.

62. Defendant's practices, as described in this Complaint, constitute unfair competition and false advertising in violation of Section 43(a)(1)(B) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B).

63. Defendant has violated the Lanham Act by using false or misleading descriptions of fact and false or misleading representations of fact in its commercial advertising or promotion that misrepresent the nature, characteristics, and qualities of Defendant's business practices and products, as set forth above.

64. Defendant has also engaged in other false or misleading advertising and promotion intended to assure patients that Defendant's practices are lawful. On information and belief, Defendant provides patients who purchase Defendant's Unapproved Compounded Drugs (or whom Defendant is trying to persuade to purchase its drugs) information that makes several false or misleading statements, including those described herein and in the exhibits hereto:

65. The above-described acts of Defendant, if not enjoined by this Court, are likely to deceive members of the general public.

66. The above-described acts of Defendant have irreparably harmed and, if not enjoined, will continue to irreparably harm Plaintiffs.

67. The above-described acts of Defendant have irreparably harmed and, if not enjoined, will continue to irreparably harm the interest of the public in being free from confusion, mistake, and deception.

68. By reason of Defendant's acts as alleged above, Plaintiffs have suffered and will continue to suffer injuries, including injury to Plaintiffs' business reputation.

69. Plaintiffs' remedies at law are not adequate to compensate for all the injuries inflicted by Defendant. Accordingly, Plaintiffs are entitled to entry of preliminary and permanent injunctive relief requiring Defendant to cease its false and misleading advertising and promotion and unfair competitive practices.

70. Because the above-described acts of Defendant are willful, Plaintiffs are entitled to disgorgement of defendant's profits (enhanced at the Court's discretion), treble damages, and costs under 15 U.S.C. § 1117.

71. This is an exceptional case, making Plaintiffs eligible for an award of attorneys' fees under 15 U.S.C. § 1117.

## SECOND CAUSE OF ACTION

### Deceptive Trade Practices in Violation of
### 815 Ill. Comp. Stat. Ann. 510/1 *et seq.*

72. Plaintiffs reallege and incorporate by reference each of the allegations in the preceding paragraphs of this Complaint as though fully set forth here.

73. Defendant's practices, as described in this Complaint, constitute deceptive trade practices in violation of 815 Ill. Comp. Stat. Ann. 510/2(a) and the common law.

74. The above-described acts of Defendant have violated the Illinois Uniform Deceptive Trade Practices Act by:

    a. causing likelihood of confusion or of misunderstanding as to source, sponsorship, approval, certification, affiliation, connection, or association of goods or services, 510/2(a)(2) & (3); and

    b. representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have, 510/2(a)(5).

75. The above-described acts of Defendant constitute unfair methods of competition, and unconscionable, deceptive, or unfair acts or practices in violation of the laws of the State of Illinois.

76. The above-described acts of Defendant have irreparably harmed and, if not enjoined, will continue to harm Plaintiffs irreparably.

77. By reason of Defendant's willful acts, Plaintiffs' remedies at law are not adequate to compensate for the injuries inflicted by Defendant. Accordingly, the Court should enter preliminary and permanent injunctive relief, in addition to awarding damages and attorney's fees.

**REQUEST FOR RELIEF**

WHEREFORE, Plaintiffs request judgment against Defendant as follows:

1. That the Court enter a judgment against Defendant that Defendant has:

   a. Engaged in false and misleading advertising and promotion, in violation of 15 U.S.C. § 1125(a);

   b. Engaged in unfair and deceptive trade practices under the common law of Illinois and the Illinois Uniform Deceptive Trade Practices Act.

2. That each of the above acts was willful.

3. That the Court preliminarily and permanently enjoin and restrain Defendant and its agents, servants, employees, successors, and assigns, and all other persons acting in concert with or in conspiracy with or affiliated with Defendant, from:

   a. using the Ozempic® and Wegovy® marks in any manner, including but not limited to (i) use in any manner that is likely to cause confusion or mistake, to deceive, or otherwise infringe Novo Nordisk's rights in the Ozempic® and Wegovy® marks in any way, or (ii) use in connection with the advertising, marketing, sale, or promotion of any Unapproved Compounded Drugs; and,

   b. advertising, stating, or suggesting that any Unapproved Compounded Drugs, including but not limited to any Unapproved Compounded Drugs that either are available, directly or indirectly, from or through Defendant or the use of which or access to which is facilitated by, or with the involvement of, Defendant:

      i. are, or contain, genuine or authentic Novo Nordisk Ozempic®, Wegovy®, or Rybelsus® medicines;

      ii. are sponsored by or associated with Novo Nordisk;

15

      iii. are approved by the FDA; have been reviewed by the FDA for safety, effectiveness, or quality; or have been demonstrated to the FDA to be safe or effective for their intended use;

      iv. achieve or have been shown or proven to achieve therapeutic results, effects, or outcomes, including but not limited to by relying on or making reference to clinical trial results for Novo Nordisk's medicines;

      v. achieve or have been shown or proven to achieve therapeutic results, effects, or outcomes similar or identical to Novo Nordisk's medicines or are interchangeable with or equivalent to genuine Novo Nordisk medicines;

      vi. are associated or connected in any way with Novo Nordisk or Novo Nordisk's medicines; or

      vii. contain any ingredient (including but not limited to semaglutide) that is supplied by Novo Nordisk, is approved by the FDA, or is the same as any ingredient in any Novo Nordisk medicine.

  c. engaging in any unfair and deceptive trade practices; and

  d. engaging in any deceptive acts or practices.

4. That the Court require Defendant to disclose conspicuously and prominently in any public-facing materials for any Unapproved Compounded Drugs, including but not limited to all advertising, marketing, and promotional materials, that: (a) the Unapproved Compounded Drugs are compounded drugs that have not been approved by the FDA; have not been reviewed by the FDA for safety, effectiveness, or quality; and have not been demonstrated to the FDA to be safe or effective for their intended use; (b) the processes by which the compounded drugs are

manufactured have not been reviewed by the FDA; and (c) FDA-approved medicines containing semaglutide are available.

5. That Plaintiffs be awarded monetary relief in the form of disgorgement of Defendant's profits for Defendant's false advertising and unfair and deceptive trade practices and that this monetary relief be trebled due to Defendant's willfulness, in accordance with the provisions of 15 U.S.C. § 1117 and any applicable state laws.

6. That the Court award disgorgement of Defendant's profits resulting from Defendant's unfair and deceptive trade practices to Plaintiffs.

7. That Defendant be ordered to account for and disgorge to Plaintiffs all amounts by which Defendant has been unjustly enriched by reason of Defendant's unlawful actions.

8. That Plaintiffs be awarded punitive damages by reason of Defendant's willful unlawful actions.

9. For pre-judgment and post-judgment interest on all damages.

10. That the Court award Plaintiffs their reasonable attorneys' fees pursuant to 15 U.S.C. § 1117 and any other applicable provision of law.

11. That the Court award Plaintiffs the costs of suit incurred herein.

12. For such other or further relief as the Court may deem just and proper.

December 12, 2024  
Chicago, Illinois

Respectfully submitted,

By: */s/ Suyash Agrawal*
    Suyash Agrawal
    Robert Aguirre
    **MASSEY & GAIL LLP**
    50 E Washington Street, Suite 400
    Chicago, Illinois 60602
    sagrawal@masseygail.com
    raguirre@masseygail.com